MERWYN H. NELLIS, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, January 10, 1923.

State — lease by State of building for use of State Industrial Commission contained, by implication, provisions of Public Buildings Law, § 3, subd. 7 — statutory restriction of liability to money available limits liability to money appropriated for particular lease — no money available where Industrial Commissioner did not include lease in question in segregating lump sum appropriation under Laws of 1921, chap. 340.

The provision of subdivision 7 of section 3 of the Public Buildings Law that each lease executed by the Trustees of Public Buildings shall contain a clause that the contract of the State thereunder shall be deemed executory only to the extent of the moneys available, and no liability shall be incurred by the State beyond the money available for the purpose, will be read into an ordinary short form lease which does not contain the statutory clause, and the State's liability under the lease will be limited as therein provided.

The State is not liable for the rent of a building for the months of August, September, October and November, 1921, under the terms of an ordinary short form lease which did not contain the statutory clause referred to, where it appears that the building was leased, on March 9, 1921, by the Trustees of Public Buildings for the benefit and use of the State Industrial Commission for the term of two years and four months; that on the reorganization of the State Industrial Commission a lump sum was appropriated by chapter 340 of the Laws of 1921 to cover maintenance and operation; that the Industrial Commissioner was authorized to file a schedule with the approval of the Governor, the chairman of the Senate Finance Committee and the chairman of the Ways and Means Committee of the Assembly, segregating the appropriation, and that the schedule filed under the authority of the statute and approved as provided therein did not include an item for the rent of the building in question.

KILEY, J., dissents, with memorandum.

APPEAL by the claimant, Merwyn H. Nellis, from a judgment of the Court of Claims, entered in the office of the clerk of said court on the 2d day of June, 1922, dismissing the claim upon the merits.

*Merwyn H. Nellis,* appellant in person.

*Charles D. Newton, Attorney-General* [*Porter L. Merriman, Deputy Attorney-General,* of counsel], for the respondent.

HINMAN, J.:

This is an appeal from a judgment of the Court of Claims, dismissing a claim for rent alleged to be due for the months of August, September, October and November, 1921, under the terms of a written lease entered into between the Trustees of Public Buildings of the State of New York and the claimant's assignor.

The lease was for storehouse purposes for the State Industrial Commission. The lease was executed March 9, 1921, for a term of two years and four months from January 1, 1921, to May 1, 1923, the monthly rental being $100. While the lease was for the benefit of the State Industrial Commission, it was executed pursuant to law by the Trustees of Public Buildings. Section 3, subdivision 7, of the Public Buildings Law (as amd. by Laws of 1915, chap. 403) provides that such Trustees of Public Buildings (being the Governor, Lieutenant-Governor and the Speaker of the Assembly) " have power to lease from time to time buildings, rooms or premises in the city of Albany, and elsewhere in the State, for providing space for departments, commissions, boards and officers of the State government, upon such terms and conditions as the Trustees deem most advantageous to the State. Any such lease shall, however, be for a term not exceeding five years, but may provide for an optional renewal, on the part of the Trustees, for a term of five years or less. *Each such lease shall contain a clause that the contract of the State thereunder shall be deemed executory only to the extent of the moneys available, and no liability shall be incurred by the State beyond the money available for the purpose.*"

The lease in question was an ordinary short form lease and did not contain the statutory clause referred to in the above quotation. There are two questions to be decided: *First,* as to whether the above provision became a part of the contract by necessary implication, thus qualifying the liability of the State under the lease so as to make it binding upon the State only to the extent that moneys should become available for the payment of rent; and *second,* whether during the months of August, September, October and November, 1921, there were any moneys available for the payment of rent under said lease.

The Court of Appeals has said as recently as 1922 in *Belmar Contracting Company* v. *State of New York* (233 N. Y. 189, 194): " We may not ignore the restrictions and limitations with which the Legislature has chosen to surround the expenditure of public moneys. They are wise and should be enforced. The State has chosen to enact something similar to the Statute of Frauds for its own protection. Those dealing with it do so knowing this fact

12

and at their own risk. * * * However inequitable the conduct of the State may be it has said that it shall only be responsible upon one condition and consequently the claimant must show that that condition has been complied with."

The situation here is not unlike those cases involving contracts made by public officials, holding that the parties must be deemed to have contracted with reference to the settled law when they acted. By implication the statute becomes a part of the terms of the contract. We have had several such illustrations recently in relation to the right of the State to regulate rates of public utility corporations notwithstanding contracts between such companies and municipalities purporting to fix the rate of fare. In *People ex rel. City of New York* v. *Nixon* (229 N. Y. 356) the Court of Appeals held that statutes existing at the time of granting railroad consents are read into the contract. The court said: " They enter by implication into its terms. .They do not change the obligation. They make it what it is. * * * The Commission is now holding the city to terms which were accepted by implication when the conditions were imposed." And further at page 359 of that case the court said: " ' One whose rights, such as they are, are subject to State restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.' " (See, also, *Public Service Comm.* v. *Pavilion Nat. Gas Co.*, 232 N. Y. 146; *Town of North Hempstead* v. *P. S. Corp.*, 231 id. 447.)

The power of the Trustees of Public Buildings, under section 3, subdivision 7, of the Public Buildings Law, is a limited power and the statute provides that " no liability shall be incurred by the State beyond the money available for the purpose." This provision by implication became a part of the terms of this lease. The Trustees of Public Buildings could not impose upon the State a contractual obligation of this character except subject to this limitation. Such a holding does not run counter to those authorities which hold that the State is bound by its contracts just as an individual would be bound. (*Danolds* v. *State of New York*, 89 N. Y. 36; *McMaster* v. *State of New York*, 108 id. 542; *People ex rel. Graves* v. *Sohmer*, 207 id. 450.)

The proposition before us is not one of relieving the State from the effect of its contract but it is holding the claimant to terms which were accepted by implication when the lease was made. By implication it was the agreement of the parties that there should be no liability of the State to pay rent beyond the money available for the purpose. To the extent that such moneys became available the qualified lease was converted into one that was absolute.

The remaining question then is as to whether there were moneys "available" for the months in question. The fiscal year of the State at the time in question began July first. The lease was executed March 9, 1921. The appropriation bill of 1920 (Laws of 1920, chap. 165) provided for the State Industrial Commission $54,000 for rents. Section 1 of such chapter provided that such appropriation "shall be available for the year beginning on the first day of July, nineteen hundred and twenty." (Laws of 1920, pp. 264, 312.) Section 6 of this act provided that such appropriation "shall be available only to pay liabilities incurred within the year beginning July first, nineteen hundred and twenty, and ending June thirtieth, nineteen hundred and twenty-one." It has been the scheme of the State to make its appropriation bills for the running expenses of the government for a period covering a year except in relation to certain appropriations not necessary to be considered here. The language of the appropriation bill has been to make moneys "available" for the year expressly covered by it. The word "available" is the word used in sections 1 and 6 of chapter 165 of the Laws of 1920 above quoted. The word "available" is the term used in section 3, subdivision 7, of the Public Buildings Law prohibiting the incurring of any obligation by the State beyond the money "available" for the purpose. There can be no question but that the intent of the statute (Public Buildings Law, § 3, subd. 7) was to use the term "available" in the sense in which it is used in the appropriation bill. When the Legislature by chapter 50 of the Laws of 1921, section 473, and chapter 642 of the Laws of 1921, section 12, reappropriated the unexpended balances of appropriation relating to the State Industrial Commission "for the fiscal year ending June thirtieth, nineteen hundred and twenty-one," due to the reorganization of the Commission by the Legislature, it was clearly intended to make those moneys "available" in the same sense and only for the balance of the period mentioned in the original appropriation of 1920 (Laws of 1920, chap. 165). So far as those appropriation bills were concerned there were no moneys available for the rent in question after June 30, 1921.

In making provision for the maintenance and operation of the State Industrial Commission for the fiscal year beginning July 1, 1921, involving the rent in question here, the Legislature made a lump sum appropriation by chapter 340 of the Laws of 1921. This was due to the authorized reorganization of the Commission and the impossibility of the Legislature being able to segregate the items of appropriation for that Commission prior to the carrying out of the reorganization. It was, therefore, provided that the

Industrial Commissioner should file a schedule which should be approved by the Governor, the chairman of the Senate finance committee and the chairman of the Assembly ways and means committee. This was done and in making up the items for rent the Industrial Commissioner did not provide any item for the premises covered by the lease in question. His schedule was duly approved in the manner provided by the statute, and no moneys became available under chapter 340 of the Laws of 1921 for the purpose of paying the rent claimed here. In the absence of any provision of the Constitution requiring the Legislature to segregate all the items of appropriation, the Legislature was within its power in broadly specifying objects for which the moneys were appropriated, leaving to the Industrial Commissioner and the designated board to segregate the items in accordance with those objects. The segregation of these items for rent to the exclusion of the premises in question was as effective as though the Legislature had done it itself.

The liability of the State under this lease must be determined in accordance with the facts and since no moneys were actually made available in due course pursuant to the method adopted by the Legislature for making funds available for rental purposes for this Commission, the claimant cannot recover.

The judgment appealed from should be affirmed, with costs.

H. T. KELLOGG, Acting P. J., VAN KIRK and HASBROUCK, JJ., concur; KILEY, J., dissents, with a memorandum.

KILEY, J. (dissenting):

Mr. Justice HINMAN in a very able opinion properly narrows down the questions to be considered on this appeal to two: "*First,* as to whether the above provision became a part of the contract by necessary implication, thus qualifying the liability of the State under the lease so as to make it binding upon the State only to the extent that moneys should become available for the payment of rent." The provision referred to is section 3, subdivision 7, of the Public Buildings Law (as amd. by Laws of 1915, chap. 403). The part of said section and subdivision in any way applicable here reads as follows: "Each such lease shall contain a clause that the contract of the State thereunder shall be deemed executory only to the extent of the moneys available, and no liability shall be incurred by the State beyond the money available for the purpose." There is no question but that this provision of the statute must be considered as read in the lease in question. The lease bears date as of January 1, 1921; by agreement it was not to take effect until the first of the following March so far as the payment of rent was concerned.

That the lease was executed by the proper parties on the part of the State is not questioned on the part of the respondent. Section 3, subdivision 7, was in effect when the lease was made. It is not questioned, and cannot be questioned but that the State complied with the statute in such cases when the lease was executed, and that there were funds available to pay the rent under the appropriation as it then existed. The rent was paid from March 1 to August 1, 1921. There is no claim that any officer exceeded his authority and it is to be presumed that such payments were made in accordance with the law. Whether the word " executory " as found in section 3, subdivision 7, shall have the force to require every contract entered into by the State always executory, and never executed, unlike all other contracts known to the law, might present a situation calling for judicial interpretation; but in this case I do not consider it an obstacle to the reversal of this judgment. The observation made in *Belmar Contracting Company* v. *State of New York* (233 N. Y. 189) is not applicable to the facts in this case, and as I view it was not called for on the facts in that case. The Comptroller delayed signing a contract awarded to the contractor; he did after considerable delay sign it, and the contractor accepted it. Afterwards he sought to make the State liable for the consequences of such delay. It was not a contract until signed by the Comptroller, and when it was signed, after such delay, the contractor could have refused to accept it. The second question considered by the learned justice is as follows: " *Second,* whether during the months of August, September, October and November, 1921, there were any moneys available for the payment of rent under said lease." The State Industrial Commission was reorganized by the Legislature of 1921, at which session chapter 340 of the Laws of 1921 was enacted and became a law April 30, 1921. In and by that statute $1,500,000 was appropriated out of moneys not otherwise appropriated " for personal service and for maintenance and operation of the Labor Department for the fiscal year beginning July first, nineteen hundred and twenty-one, and ending June thirtieth, nineteen hundred and twenty-two. Of the amount hereby appropriated, not to exceed one million two hundred thousand dollars shall be available for personal service." Henry D. Sayer was the Industrial Commissioner appointed under the revised Labor Law, being the reorganization statute, and under the said special appropriation act (Laws of 1921, chap. 340) it was provided that he should file with the Governor, the chairman of the Senate finance committee and the chairman of the ways and means committee of the Assembly, " a tentative segregation of the amount hereby appropriated." He proceeded

to designate the whole amount of $1,200,000 for personal service, and of the balance he set aside only $30,424 for rent, arbitrarily excluding this lease from participation; the balance of the $300,000 he says " was utilized for the expenses of maintenance and operation of the department, including rent, communications, traveling expenses, equipment, and supplies, etc." He says the foregoing item of $30,424 was included in the enumeration last above given by him. It is obvious that the majority of the items in and by which he seeks to account for the disappearance of the $300,000 could not be known until the last half of the fiscal year commencing July 1, 1921. There is no evidence before us as to what constituted the segregation. In addition to the foregoing amount of $1,500,000 there was on hand, on February 1, 1921, an unexpended balance, previously appropriated for the maintenance of this department, of $1,217,236.60, which by section 12 of chapter 642 of the Laws of 1921 (amdg. Labor Law [Consol. Laws, chap. 31; Laws of 1921, chap. 50], § 473) was reappropriated for the use of this department. As the case stood at the close of the evidence, *prima facie*, there was money to pay this claim. This record presents, very forcibly, the question, " what became of the money? " If it was not there, the appellant was not called upon to furnish that information. We are not required to relieve the State of the necessity of proving its defense any more than if it was an individual. It is dangerous doctrine to say that where there are equal claimants, an officer can arbitrarily cut off one claimant, depriving him of compensation, and say to the other you shall be paid. It impresses me now that a new trial should be had.

Judgment affirmed, with costs.