SCOTTS BLUFF COUNTY, APPELLANT, V. STATE OF NEBRASKA, APPELLEE.

276 N. W. 185

FILED NOVEMBER 12, 1937.   No. 30046.

*Rush C. Clarke, Robert W. Patterson* and *Allen, Requartte & Wood,* for appellant.

*Richard C. Hunter, Attorney General,* and *Francis V. Robinson, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE and MESSMORE, JJ.

EBERLY, J.

Appellant, hereinafter called plaintiff, after having obtained legislative permission to sue the state by resolution of the senate of the 1933 regular session, and also by resolution adopted by the senate again in its 1935 legislative session, but without any prior presentation of its claims to the state auditor, filed its suit thereon against appellee, the state of Nebraska, hereinafter called defendant, in the district court for Lancaster county. To the county's amended and supplemental petition, the state demurred "for the reason this court has no jurisdiction over the subject-matter of this action, and for the further rea-

son that the petition does not state facts sufficient to constitute a cause of action." This demurrer the district court sustained. Plaintiff appeals.

This action is in the nature of a claim for contribution in favor of plaintiff and against defendant, plaintiff alleging it paid more than its proportionate share due to certain bridge contractors as provided in three written contracts, under the state aid bridge law, for the construction of three bridges, alleged to have been entered into jointly by defendant and plaintiff as coobligors on September 16, 1919. So far as the controlling terms are concerned, save only as to amounts and description of the structures, the bridges covered by the contracts in suit are identical and invoke identical principles of law for the determination of the rights of the parties thereto.

The surrounding facts and circumstances which together form the background of the present controversy include the following: Prior to 1911 the duty and responsibility for the erection and maintenance of all bridges within their boundaries, excepting certain structures situated within municipalities and over streams forming state boundaries, were by law imposed upon the respective counties. In 1911 chapter 112 of the session laws of that year was enacted, which provided limited "state aid" for counties in the construction of any bridge across any stream of the width of 175 feet or more under the jurisdiction of such county boards, and prescribed the methods for obtaining the same from the designated state authorities.

Chapter 112, Laws 1911, was subsequently amended by chapter 190, Laws 1919, approved April 19, 1919, and incorporated into the "Civil Administrative Code" as article III, title VII, thereof. Section 2, art. III, provides the method to be followed by counties to secure state aid for the construction of state aid bridges, and also contains the provision, viz.: "The state shall not be liable for any money in excess of the appropriation made for that purpose." For the biennium ending March 31, 1921, the appropriation for state aid bridge funds was made and

limited by chapter 297, Laws 1919, entitled, "An act to appropriate 95 per cent. of the one-fifth of one mill per annum tax levy on the grand assessment roll of the state for the years 1919 and 1920 for the state aid bridge fund for the biennium ending March 31, 1921. * * * Approved March 19, 1919."

The situation outlined, so far as concerns chapter 190 and chapter 297, Laws 1919, invokes the application of the principle of construction, viz.: "All statutes *in pari materia* must be taken together and construed as if they were one enactment, and, if possible, effect given to every provision." *Chicago, R. I. & P. R. Co. v. Zernecke,* 59 Neb. 689, 82 N. W. 26. See, also, *Logan County v. Carnahan,* 66 Neb. 693, 95 N. W. 812; *State v. Omaha Elevator Co.,* 75 Neb. 637, 106 N. W. 979.

The contracts out of which plaintiff's claims arise were made pursuant to the terms of the statutes referred to. These statutes afforded the sole authority for the action taken, and, whether referred to or not in the written instruments actually executed by the representatives of the county and the state, the terms of the statutes necessarily, in legal effect, were a part thereof and controlling both as an authorization and as limitations.

In *McWilliams v. Griffin,* 132 Neb. 753, 273 N. W. 209, we stated:

"A contract is not merely what the parties expressly stipulate. It is that also which the existing laws of the county where the contract is made annex to it at the time when it was formed. *Ogden v. Saunders,* 12 Wheat. (U. S.) 213; *Bronson v. Kinzie,* 1 How. (U. S.) *311. See, also, *Farmers & Merchants Bank v. Federal Reserve Bank,* 262 U. S. 649, 43 Sup. Ct. Rep. 651; *Fidelity State Bank v. North Fork Highway District,* 35 Idaho, 797, 209 Pac. 449; *State v. Klein,* 63 N. Dak. 514, 249 N. W. 118; *Gregg School Township v. Hinshaw,* 76 Ind. App. 503, 132 N. E. 586; *Maxwell v. Eddy Paper Co.,* 232 Mich. 356, 205 N. W. 111; *Anderson v. Miller Scrap Iron Co.,* 169 Wis. 106, 170 N. W. 275.

"Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into and becomes a part of the contract. This is true between individuals dealing between themselves by contract, and it is also true between individuals and the government. *Cobbs v. Home Ins. Co. of New York,* 18 Ala. App. 206, 91 So. 627; *People v. Levitt,* 145 Misc. 621, 260 N. Y. Supp. 458; *Walker v. Whitehead,* 16 Wall. (U. S.) 314; *City of Henderson v. Henderson Traction Co.,* 200 Ky. 183, 254 S. W. 332; 13 C. J. 560.

"The foregoing rules were early adopted, and have been consistently applied and followed, in this jurisdiction. *Watkins & Co. v. Kobiela,* 84 Neb. 422, 121 N. W. 448; *American Surety Co. v. School District,* 117 Neb. 6, 219 N. W. 583."

So, also, "The authority to bind the state by contract need not be express, but may be implied; but it must be an actual, as distinguished from an apparent, authority, and cannot be varied or enlarged by mere usage. The Constitution of the state is a part of state contracts, and, where an agent is appointed by law to contract for the state, the law under which he acts is as much a part of the contract made by him as if it were formally embodied in the contract. Statutes qualifying or limiting the grant of authority to contract are mandatory, and contracts not conforming thereto are not binding on the state. The governor and other executive officers of a state have no general authority to contract in its behalf and can bind the state only within the power specially conferred on them by law." 59 C. J. 170. As supporting the foregoing text, we cite the following: *Hill v. American Book Co.,* 171 Ark. 427, 285 S. W. 20; *State v. Allis,* 18 Ark. 269; *Nellis v. State,* 204 App. Div. 176, 197 N. Y. Supp. 762 (affirming 118 Misc. Rep. 612, 194 N. Y. Supp. 169) ; *State v. Ward & Briggs,* 9 Heisk. (Tenn.) 100.

In *Nellis v. State, supra,* it appears that the controlling statute and facts involved presented a case in principle almost identical with that here under consideration. The

opinion in the *Nellis* case recites, viz.: "The power of the trustees of public buildings, under section 3, subdivision 7, of the public buildings law, is a limited power and the statute provides that 'no liability shall be incurred by the state beyond the money available for the purpose.'" The lease in litigation in the *Nellis* case actually subscribed by these trustees was an ordinary short form lease and did not contain the clause above referred to, or any reference thereto, or any provision in effect stating the limitation therein prescribed. But it was held, on this state of facts, that the provision above quoted, "by implication," became a part of the lease, and "the trustees of public buildings could not impose upon the state a contractual obligation of this character except subject to this limitation."

As applied to the controversy now before us, the conclusion is that the words of the statute, "the state shall not be liable for any money in excess of the appropriation made for that purpose," by implication, became a part of these contracts entered into by and with the bridge contractors, out of which the present action proceeds; and the representatives of the state could not impose upon the state a contractual obligation under the state aid bridge act except subject to this controlling limitation. The state necessarily must be conceded the right to limit its obligations to the money expressly appropriated for these donations.

Plaintiff's allegations in the pleading demurred to, viz., "that thereafter the Allied Contractors, Inc., commenced construction of said bridges and proceeded therewith; that shortly prior to the 1st day of October, 1920, the state aid bridge fund of the state of Nebraska became depleted and the state was without funds with which to pay its proportion of the cost of the remainder of the construction of said bridges," by necessary effect, plead and admit that any further expenditures by the state would be in excess of the "appropriation made for that purpose," and would transgress the statutory limitation expressly prescribed.

It is obvious that no right to contribution can exist based upon the nonperformance by the state of Nebraska

of a contract which it was prohibited from making, and as to which, after October, 1920, by necessary implication, further performance by the state was prohibited.

While the record does not disclose the reasons which actuated the trial court in sustaining the demurrer to the petition, the case was largely submitted by the parties to this court as a question of practice, viz.: In the present case was it essential to the jurisdiction of the trial court that plaintiff's claims be first presented to the state auditor and, in the event of an adverse determination by that official, that an appeal therefrom be lodged in the district court for Lancaster county? This practice was not followed in the instant case.

Waiving arguendo the question of statutory limitation just discussed, it appears that the position of plaintiff, summarized, may be said to be as follows: Under the state aid bridge act the plaintiff and defendant as coobligors entered into a contract for the construction of three state aid bridges. Shortly prior to October 1, 1920, the state aid bridge fund became depleted, and thereafter, at the request of certain representatives of the state, plaintiff paid out the amounts in suit which should have been paid by the state under the terms of its contracts, and thus the county is entitled to reimbursement for the advances thus made.

It must be conceded that this amounts to an action for contribution, and grows out of the three written contracts for the construction of the bridges, entered into in 1919. In the ordinary course of proceeding, it is, in effect, an action at law upon an implied contract. *Estate of Koch*, 148 Wis. 548, 134 N. W. 663; *Chipman v. Morrill*, 20 Cal. 130.

The controlling rule announced by this court is: "Where the statutes provide an exclusive remedy against the state and a particular forum for a judicial trial, one branch of the legislature alone cannot extend jurisdiction to another forum." *McNeel v. State*, 120 Neb. 674, 234 N. W. 786.

In such *McNeel* case this court had occasion to discuss the principles which are applicable to and controlling in

the instant controversy. We can add nothing to the force of this language, in the light of the facts disclosed by the present record. In delivering the opinion of this court, Rose, J., in the discussion of the constitutional and statutory provisions, says in part:

" 'The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought.' Const. art. V, sec. 22.

" 'The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant for the amount allowed shall be drawn. Provided, that a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court.' Const. art. VIII, sec. 9.

" 'The state may be sued in the district court of the county wherein the capital is situate, in any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state.' Comp. St. 1929, sec. 27-324.

" 'The auditor of public accounts shall keep a record of all claims presented to him for examination and adjustment and shall therein note the amount of such claims as shall be allowed or disallowed, and in case of the disallowance of all such claims, or any part thereof, the party aggrieved by the decision of the auditor and secretary of state may appeal therefrom to the district court of the county where the capital is located within twenty days after receiving official notice.' Comp. St. 1929, sec. 77-2607.

"In view of the constitutional and statutory provisions relating to claims against the state and the judicial interpretations thereof, the legislation conferring upon the district courts jurisdiction to hear and determine 'all claims against the state filed therein which have previously been presented to the auditor of public accounts, and have been in whole or in part rejected or disallowed' (Comp. St. 1929,

sec. 27-319), includes 'any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state,' while 'all claims or petitions for relief that may be presented to the legislature, and which may be by any law, or by any rule or resolution of the legislature, or either house thereof, referred to either of said courts for adjudication' (Comp. St. 1929, sec. 27-319), apply to claims based on wrongs or torts. In other words, claims in the first of the statutory classes are based on, or arise out of, contracts with the state, and claims in the second of the statutory classes are not included in the first but are based on wrongs or torts committed by departments, officers or agencies of the state. A claim in the first class must be presented to the auditor with the right of appeal from his decision and the second must be presented to a district court with legislative authority to sue the state. Comp. St. 1929, sec. 27-319; *State v. Stout,* 7 Neb. 89; *Peterson v. State,* 113 Neb. 546; *Pickus v. State,* 115 Neb. 869.

"Where the statutes provide an exclusive remedy against the state and a particular forum for judicial trial, one branch of the legislature alone cannot extend jurisdiction to another forum. The constitutional provision that 'The state may sue and be sued, and the legislature shall provide by law in what manner and in what court suits shall be brought,' does not confer on a single branch of the legislature power to extend jurisdiction beyond that limited by statute. Since the Constitution and statutes provide that 'matter founded upon or growing out of a contract, expressed or implied,' require such a claim against the state to be presented to the auditor of public accounts with the right of claimant to appeal from an adverse decision to the district court where the capital is located, a single branch of the legislature cannot confer on another district court jurisdiction to entertain and determine an action 'founded upon or growing out of a contract, expressed or implied.' "

In the light of this discussion, which we again approve, it is clear that the petition of plaintiff wholly failed to state a cause of action against the state, and the trial court properly sustained the demurrer of defendant thereto.

Therefore, the judgment of the district court is correct, and it is

AFFIRMED.