THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of NATHAN ZUCKER, President of ZUCKER WATER AND SEWER SERVICE CORPORATION, *v.* PHILIP LEVITT, Defendant.

City Magistrates' Court of City of New York, Seventh District, Borough of Manhattan, November 11, 1932.

*Charles Howard Levitt,* for the complainant.

*Louis Rosenberg,* for the defendant.

GOLDSTEIN, J. The defendant is charged with a violation of section 36-b of the Lien Law. That statute as in effect October 1, 1930, reads as follows:

"§ 36-b. Subcontractor who diverts funds guilty of larceny. The funds received by a subcontractor from an owner or contractor for the improvement of real property are hereby declared to constitute trust funds in the hands of such subcontractor to be applied first to the payment of the claims of laborers and materialmen, arising out of the improvement and to the payment of premiums, on surety bond or bonds and premiums on insurance accruing during the making of the improvement and any subcontractor and any officer, director or agent of any subcontractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law."

The defendant raises four important questions:

1. That section 36-b is unconstitutional.

2. That defendant is not chargeable thereunder, because section 36-b, before same was amended in 1932, did not inure to the benefit of the subcontractor.

3. That section 36-b does not affect and was not intended to apply to a case where the funds are received by a subcontractor on a public improvement.

4. That because of the privilege afforded under section 36-c to commingle funds, a charge of larceny may not be sustained.

As to point 1. I hold that the statute is constitutional. The evils which infested the building industry were well known to all. It was common knowledge that "shoestring" builders, contractors and subcontractors frequently engaged in building enterprises with

little or no capital; that contracts were made by them for material and labor; that payments subsequently received by such builders, contractors or subcontractors from owners or mortgagees were frequently not applied to the payment of such material and labor, but instead were diverted from their proper purpose, leaving to the victims only the remedy of a mechanic's lien without the security of a fund out of which it could be satisfied.

It is easily seen how such transactions are affected with a public interest. Losses incurred must be absorbed by the general public. This results in higher construction costs and, therefore, in higher rents. The cost of construction is eventually paid for by the public. To remedy this situation, the Legislature wisely enacted, among other sections, section 36-b. Funds now paid on account of real property or public improvements are declared to be trust funds, applicable first to the payment of the claims of those who supplied the material and labor.

I deem it well within the province of the Legislature to enact a statute so salutary as this one. The question is not altogether new. Similar legislation has been enacted in various States of the Union, and its validity has survived attack on constitutional grounds. Specifically, the defendant contends that section 36-b is unconstitutional because it deprives him of property without due process of law. He argues that a contractor or subcontractor under a contract containing no trust provision or contractual obligation similar to that set forth in the statute, earns money which becomes his absolute property; that there is no contract with the one from whom he receives such money obligating him to use it in a specified manner; and that there is no contract with those from whom labor or materials were purchased as to how such moneys should be applied.

The argument is fallacious. Contract rights like personal rights are relative, not absolute, and are subject and subordinate to the public interest. For when a contract is made after the enactment of a statute, it is in the contemplation of the parties, and such statute is as much a part of the contract as though it were therein fully expressed. This being so, those who thus contract are charged with the knowledge that they have only a limited right in funds to be received by them under circumstances detailed in the statute.

As to point 2. The defendant further maintains that the complainant is not within the protection of the statute, as in effect October 1, 1930, because the complainant is a subcontractor. He argues that subcontractors were not covered by the act until it was amended in 1932. The amendment became effective July 1, 1932, which was after the contracts relating to the improvement were made

and after all payments made under such contracts were received by defendant.

In my opinion the statute of 1930 does cover and protect laborers and materialmen. Section 2 of the Lien Law defines " laborer " as " any person who performs labor or services upon such improvement " and " material man " as " any person who furnishes material for such improvement." By virtue of section 37 of the General Construction Law the word " person " of course includes a corporation. It is conceded for the purposes of this hearing (see paragraph 5 of the stipulation) that the complainant and Philip Levitt, Inc., defendant's corporation, entered into a contract " for performance by the Zucker Water and Sewer Service Corporation, as its subcontractor, of a portion of the work undertaken to be performed by Philip Levitt, Inc., for the G. F. V. Holding Corporation, before mentioned incident to the contract given, above referred to; " and in paragraph 14 of the stipulation it is further conceded that at the time Philip Levitt, Inc., received $2,890.30 from the G. F. V. Holding Corporation " there was unpaid for work performed and materials furnished in connection with said public improvement, to the following persons, for labor and/or materials in the amounts following: Zucker Water and Sewer Service Corporation, labor and material, $766.31; Empire Pipe Corporation, materials furnished, $285.13; Samuel R. Kahn, materials furnished, $1,581; Sam S. Glauber, Inc., materials furnished, $762.11; Kennedy Valve Manufacturing Company, materials furnished, $157.85; Nason Manufacturing Company, materials furnished, $79.56."

It thus appears conclusively that the complainant was both a laborer and a materialman within the contemplation of section 36-b before the amendment of 1932.

He may also have been a subcontractor. It is conceivable that all three, subcontractor, materialman and laborer, may be combined in the same person or corporation. That a person or corporation is also a subcontractor does not, however, defeat his or its rights under the statute as a laborer or materialman.

As to point 3. The defendant contends that section 36-b does not apply to contracts for public improvements and moneys received therefrom. Here, too, he is in error.

It is true that the words " public improvement " are not specifically included in section 36-b. But it does provide that " the funds received by a subcontractor from an owner or contractor * * * are hereby declared to constitute trust funds in the hands of such subcontractor * * *."

Section 2 of the Lien Law, as it stood prior to July 1, 1932,

defines subcontractor as follows: " The term ' subcontractor ' when used in this chapter [*i. e.*, Laws of 1909, chap. 38, § 2, as amd.], means a person who enters into a contract with a contractor for the improvement of such real property or such public improvement or with a person who has contracted with or through such contractor for the performance of his contract or any part thereof."

It is apparent, therefore, that a subcontractor within the meaning of the statute includes one engaged in a public improvement. It is a cardinal principle of construction that all sections of a law must be read together in order to get its fair meaning.

Relating the definition of subcontractor to that term as used in section 36-b, makes it clear that it applies to one engaged in a public improvement.

As to point 4. Section 36-c of the Lien Law reads as follows:

" § 36-c. Nothing contained in this act shall be construed to require a contractor or subcontractor to keep in separate bank accounts or deposits the funds received under separate contracts, provided his books of account shall clearly show the allocation to each and every contract of the funds deposited in his general or special bank account or accounts."

The defendant asserts that this permission to commingle funds, with his general or special bank account, entirely destroys the beneficent purpose of the statute and defeats the trust which it creates.

The Legislature foresaw inconvenience in a separate account for each contract. It overcame this by the requirement that the books of account should clearly show the allocation to each and every contract of the trust funds so deposited. Thus no confusion could arise. A contractor or subcontractor would be enabled at any time to learn the exact status of each particular contract account.

As between the defendant and those who are beneficiaries of the trust by virtue of the statute, there is no question in my mind that the law remains in full effect, notwithstanding section 36-c.

It is the law that trust funds may be traced and a trustee held responsible for them even when they are commingled. The provisions of section 36-c recognize this principle and by providing for allocation of funds to each contract, the Legislature has given an aid to the tracing and separation of trust funds.

The briefs submitted dwell with some detail upon sections 25-a and 25-b. I have not discussed them because they were not in effect when the contracts and subcontracts in question, and the payments and expenditures under them, were made.

In my opinion they added nothing to the law that was not

already there. They served to clarify the statutes and nothing more.

The stipulated facts are that Philip Levitt, Inc., received $2,890.30 from the G. F. V. Holding Corporation at a time when it was indebted to the complainant and other materialmen and laborers for work and materials on a public improvement to the extent of over $3,600; that the said corporation failed to pay such debts; that Philip Levitt, the defendant, managed the funds of the corporation, and was in charge of disbursing them for and in behalf of the corporation; that he disbursed some or all of this money to others than those for whom the corporation held the funds in trust.

The statute, section 36-b, declares that " any officer, director or agent of any subcontractor who applies or consents to the application of such funds for any other purpose and fails to pay the claims hereinbefore mentioned is guilty of larceny and punishable as provided in section thirteen hundred and two of the penal law."

Under the proof as established (by the facts conceded for the purpose of this hearing) and under the stipulation that the testimony on the " summons " is to be the testimony on the complaint (if a complaint is ordered), I order the taking of a complaint for grand larceny against the defendant and the holding of the defendant to await the action of the grand jury.