VULCAN RAIL & CONSTRUCTION CO., INC., Appellant, Respondent, *v.* COUNTY of WESTCHESTER, J. J. FARLEY CORPORATION, JOSEPH SASSO, E. J. STERNER LUMBER CO., INC., JOSEPH H. VON ROESCHLAUB, Doing Business under the Firm Name and Style of RAILROAD WATERPROOFING CO., UNITED STATES FIDELITY & GUARANTY CO., and NEW YORK CENTRAL RAILROAD COMPANY, Respondents, Impleaded with THOMAS J. COONEY, IRWIN M. PHILLIPS and FRANK A. SCHAEFER, as Assignees of the J. J. FARLEY CORPORATION, TARRYTOWN NATIONAL BANK & TRUST CO., YONKERS BUILDERS SUPPLY CO., JOSEPH C. RYAN & SONS, INC., COUNTY SAND & STONE CORPORATION, NEW YORK TRAP ROCK CORPORATION, THE TRAVELERS INSURANCE COMPANY and THE TRAVELERS INDEMNITY COMPANY, Respondents, Appellants.

Second Department, March 5, 1937.

*M. J. Winston,* for the appellant, respondent.

*I. J. Beaudrias,* for the respondent, Yonkers Builders Supply Co.

*Monroe J. Cahn* [*Alfred S. Schechter* with him on the brief], for the respondent, appellant, Tarrytown National Bank & Trust Co.

*Herman D. Furman,* for the respondent, appellant, Joseph C. Ryan & Sons, Inc.

*Joseph Diehl Fackenthal,* for the respondents, appellants, County Sand & Stone Corporation and New York Trap Rock Corporation.

*Edwin R. Wolff,* for the respondents, appellants, The Travelers Insurance Company and The Travelers Indemnity Company.

*Thomas M. Smith, First Assistant County Attorney* [*William A. Davidson, County Attorney,* with him on the brief], for the county of Westchester.

CLOSE, J.   There are two judgments in this action, and an appeal is taken from each.   The amended complaint stated two causes of action.   The first was to foreclose a mechanic's lien on a public improvement.   The second was a cause of action against the defendant Tarrytown National Bank & Trust Co. for alleged diversion to it of moneys received by the contractor under the contract. The relief demanded on this cause of action was an accounting. Eleven of the defendant lienors served answers containing counter-

claims against the bank, similar to the second cause of action in the amended complaint.

The issues were referred to an official referee. During the trial an order was made severing the two causes of action. Thereafter, two decisions were made and two judgments entered. The first judgment, entered on June 12, 1935, fixed the liens of the various parties and declared invalid an assignment held by the bank under which the bank claimed a share of the fund remaining in the hands of the county of Westchester. From this judgment the bank appeals. The second judgment, entered on October 16, 1935, dismissed the second cause of action and the corresponding counterclaims against the bank. The plaintiff and various defendants appeal from the latter judgment.

On May 18, 1931, the J. J. Farley Corporation entered into a contract with the county of Westchester for the construction of a concrete arch bridge over Tibbetts brook in the city of Yonkers. The J. J. Farley Corporation apparently consisted of one Farley and his wife. Prior to the execution of the contract, and in the expectation of obtaining it, Farley had arranged with the Tarrytown National Bank & Trust Co., for credit to the extent of $20,000. The bank actually advanced the corporation $8,250 before the contract was signed. As soon as the contract was executed, the loan was increased to $20,000. It appears that some portions of these advances were used to meet payments due on other contracts upon which the J. J. Farley Corporation was then engaged.

Between May and October, 1931, the bank made several additional temporary loans to the contractor, which were repaid within a few days. On September 21, 1931, the contractor delivered to the bank an assignment of the moneys due under the contract which did not contain the trust covenant required by section 25, subdivision 5, of the Lien Law. ·On October sixteenth the contractor was still indebted to the bank to the extent of $20,000 plus an additional loan of $2,500 made a few days previously. On that day an estimate of $41,346.48 was payable by the county under the contract. At the bank's request, the county delivered the check to the bank. The bank apparently indorsed the check, deposited it in the Farley account, and charged the notes into the account, thus canceling the indebtedness. Within the next two weeks the bank made two new loans to the contractor of $10,000 each, so that by October twenty-ninth the indebtedness was again $20,000.

On December 23, 1931, $5,000 was repaid to the bank, leaving a balance of $15,000 due, which has never been repaid. On January 23, 1932, the first lien was filed. The contractor abandoned the job in April or May, 1932. The unexpended balance remaining in

the hands of the county is $22,012.01. The aggregate amount of the valid liens is $41,210.45.

I shall first discuss the appeal taken by the plaintiff and the defendants other than the bank from the judgment of October 16, 1935, dismissing the second cause of action and the counterclaims.

The main question involved is whether the moneys paid to the contractor by the county were trust funds in the hands of the bank for the benefit of laborers, materialmen and other persons specified in section 36-a of the Lien Law. This was the theory of the plaintiff's second cause of action and of the counterclaims of the various defendants against the bank. The appellants claim that the sum of $44,210.70 of such alleged trust funds was diverted to the bank, consisting of the $22,500 paid on October seventeenth, the $5,000 paid in December, and several temporary loans repaid on other dates. The main controversy concerns the repayment of the original loans aggregating $20,000.

The claim that the moneys paid to the bank by the contractor constituted trust funds is based on the theory that section 36-a of the Lien Law applies to the transaction. That section provides in substance that the funds received by a contractor " from an owner for the improvement of real property " are trust funds in the hands of the contractor to be applied first to the payment of specified creditors under the contract, and that any contractor who diverts such funds is guilty of larceny.

Section 36-a was enacted in 1930 and was in effect at the time of the happening of the events involved in this action. By chapter 627 of the Laws of 1932 the Legislature adopted section 25-a of the Lien Law, which is exactly the same in language as section 36-a except that instead of the words " from an owner for the improvement of real property," it contains the phrase " for a public improvement." Section 25-a was not in effect when the payments involved here were made. The plaintiff and the defendants other than the bank contend, however, that section 36-a applies to contracts for public improvements as well as private improvements.

The dispute revolves about the meaning of the phrase " from an owner for the improvement of real property." The definitions given in section 2 of the statute do not throw much light on the question. The definitions of " owner," " improvement " and " real property " might be considered broad enough to cover a public improvement, but a separate definition is given in the same section for the term " public improvement," thus indicating that a public improvement is to be regarded as something distinct from all other improvements.

The question has been passed on several times with conflicting results. In *People* v. *Levitt* (145 Misc. 621) the defendant had been charged with larceny in diverting funds contrary to section 36-b of the Lien Law. Section 36-b is the same as section 36-a except that the former applies to subcontractors and the latter to contractors. The point was raised that section 36-b had no application to funds received under a contract for a public improvement. The city magistrate overruled the objection, holding that the section applied equally to contracts for public and private improvements. The defendant was indicted. The indictment was dismissed in the Court of General Sessions, which held that the subsequent enactment of section 25-b indicated that section 36-b was not intended to apply to funds received under a contract for a public improvement. (*Sub nom. People* v. *Levitt Co., Inc.*, 151 Misc. 484.) The order dismissing the indictment was unanimously affirmed without opinion by the Appellate Division, First Department (241 App. Div. 857). This appears to be the only determination from an appellate court on the question.

In *Pick Co.* v. *Travis* (6 Fed. Supp. 486) the District Court, Eastern District of New York, held, in an action brought to impress a trust on moneys paid to a contractor under a public improvement contract, that section 36-a of the Lien Law includes such a contract as well as contracts for private improvements. This decision was apparently made in reliance upon the magistrate's decision in *People* v. *Levitt*, and was handed down before that decision had been in effect reversed by the Court of General Sessions and the Appellate Division.

In *American Laundry Machinery Co.* v. *Union Trust Co.* (153 Misc. 55) it was held that section 36-a has no application to a contract for a public improvement. The decision was based upon (1) the distinction running throughout the Lien Law between an improvement of real property and a public improvement, and (2) the enactment of section 25-a in 1932, specifically fastening a trust upon funds arising out of a contract for a public improvement.

In my opinion the conclusions reached in *People* v. *Levitt Co., Inc.* (by the Court of General Sessions), and in *American Laundry Machinery Co.* v. *Union Trust Co.* (*supra*) are correct, and that section 36-a does not contemplate a contract for a public improvement. The distinction made throughout the statute between the two types of improvements is a very marked one. Attention has already been drawn to the fact that in section 2 an " improvement " and a " public improvement " are separately defined. The two classes of liens are provided for in different sections and are of a totally different character, the one attaching to realty and the other to a

fund of money (§§ 3 and 5). The notices of lien in the two cases are separately provided for (§§ 9 and 12). Distinct provisions are made for the filing of the notice (§§ 10 and 12). There are separate sections dealing with the assignment of contracts and orders (§§ 15 and 16), the duration of the lien (§§ 17 and 18), its discharge (§§ 19 and 21), and priority among lienors (§§ 13 and 25). Enforcement of the two forms of lien is provided for in different sections (§§ 41 and 42). The distinction has been drawn so repeatedly throughout the statute that it seems unlikely that the Legislature could have intended to make section 36-a applicable to both forms of contracts without distinctly saying so.

The most persuasive indication of the legislative intent is found in the enactment in 1932 of section 25-a, which applies specifically to contracts for public improvements. If the Legislature had believed that section 36-a applied to public as well as private improvements, there was no occasion for enacting the new section. If the purpose was, as the plaintiff claims, to " clarify " the law, a simple amendment to section 36-a would have sufficed. Instead of amending the old section, the Legislature adopted an entirely new one, inserting it in the statute after section 25, which applies only to public improvements, and leaving section 36-a to follow section 36, which applies only to private improvements.

Doubt as to the intention of the Legislature is largely removed by the report of the Joint Legislative Committee recommending the passage of sections 25-a and 25-b, in which the Committee said: " The foregoing amendments are recommended in order to make the public works' provisions conform to the provisions in relation to liens on private improvements and are the same as sections 36-a and 36-b of the existing Lien Law."

The plaintiff and its coappellants place⁷ great reliance on the so-called principle of assimilation laid down in *Brace* v. *City of Gloversville* (167 N. Y. 452). The question there was whether section 15 of the Lien Law of 1897, which provided that no assignment of moneys under a contract for the improvement of real property should be valid unless a copy of the contract was filed with the assignment, applied to a contract for a public improvement. The Court of Appeals held the section applicable to both types of improvement, saying (p. 455): " While it is true that some sections of article 1 of the Lien Law entitled ' mechanics' liens ' apply only to private property, and others only to public improvements, the fact that the regulations as to both classes of liens are prescribed by the same article of the same statute indicates a clear intention on the part of the Legislature to assimilate the law as to the two classes so far as was practicable. * * * We think the fair rule of con-

struction is that the various provisions of the article should be held to relate to all mechanics' liens except where the language of the section evidences a different intent or where from the nature of the subject regulations as to one class are inapplicable to the other."

In my opinion, the foregoing case does not apply here. The question is solely one of legislative intent. Here there is an important factor disclosing the intention of the Legislature, in the subsequent enactment of a new section (25-a) covering the very subject-matter which the plaintiff claims was included originally in section 36-a. This indicates clearly that the Legislature did not intend to include contracts for public improvements in section 36-a, and overcomes the general rule of construction announced in *Brace* v. *City of Gloversville* (*supra*). If we were to hold otherwise we would in effect be making the new section effective as of 1930, which the Legislature did not see fit to enact until two years later. Although the Lien Law is to be construed liberally (§ 23), " Freedom to construe is not freedom to amend." (*Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341.)

In *Globe Plaster Co.* v. *Seaboard Surety Co.* (153 Misc. 415) the court construed the phrase " contracts for the improvement of real property," as used in section 11 of chapter 627 of the Laws of 1932 (amending the Lien Law), to include contracts for public as well as private improvements. The decision was based mainly on *Brace* v. *City of Gloversville* (*supra*). This case and others cited by the plaintiff (*Schaghticoke Powder Co.* v. *G. & J. R. Co.*, 183 N. Y. 306; *Standard Sand & Gravel Co.* v. *City of New York*, 172 App. Div. 80) are distinguishable on the same ground as the *Brace* case.

It is said that the evil sought to be remedied was as great in the case of public as of private improvements. That is not strictly true. In the performance of contracts for public improvements the work is generally more closely supervised and the payments to the contractor are more carefully safeguarded than in the case of private contracts. The risks assumed by subcontractors, laborers and materialmen are for that reason greater in the latter class of contracts. In the case of private improvements, the lienors also have a less advantageous remedy, for their lien attaches only to the realty, while a lien under a contract for a public improvement attaches directly to a sum of money and is more readily collectible. For these reasons a greater necessity existed for the protection of creditors under private improvement contracts. The immediate object of the Legislature seems to have been to prevent the diversion of funds received under building loan contracts and thus safeguard the interests of creditors who otherwise had insufficient protection.

Having found that section 36-a provided effective protection, the Legislature, in 1932, decided to extend the same theory to public improvement contracts.

The plaintiff argues also that, irrespective of statute, the funds paid to a contractor are trust funds for the benefit of laborers and materialmen. The cases cited in support of that theory do not sustain it. *Kane Co.* v. *Kinney* (174 N. Y. 69) dealt simply with the question whether a general assignee for the benefit of creditors of the contractor is entitled to the fund due from the owner in preference to lienors. The court held that the assignee took title subject to liens properly filed, but was careful to point out (p. 75) that "We are not now dealing with a case where the fund has been assigned for a valuable consideration * * *. We are dealing with a case of an assignee for the benefit of creditors who stands in the place of his assignor, with no other or greater rights and who takes the property subject to every equity and claim that might have been asserted by third parties."

Nor is there any force in the contention that the liens follow the fund even after it has been paid out by the State or municipality. The Court of Appeals has held otherwise. (*Sexauer & Lemke* v. *Burke & Sons Co.*, 228 N. Y. 341.)

My conclusion, therefore, is that the official referee correctly decided that the funds paid to the contractor and then turned over to the bank were not trust funds and were not subject to liens of laborers and materialmen; and, in particular, that section 36-a of the Lien Law has no application.

The dismissal of the claims against the bank was also correct for another reason. Even if section 36-a did apply, it imposes a trust upon the fund only " in the hands of such Contractor." The bank would not be liable unless it participated knowingly in a diversion of the fund. The official referee found, upon ample evidence, that the bank had no knowledge of any claims on the part of laborers, materialmen or others mentioned in the statute. Consequently it had no knowledge that the moneys received from the county were trust funds, and it could not have been aware of any misappropriation. In such circumstances, there is no liability on the part of the bank. (*Clarke* v. *Public Nat. Bank & Trust Co.*, 259 N. Y. 285.)

The bank is the sole appellant from the other judgment. Its appeal is directed to that part of the judgment which declares its assignment invalid and directs its cancellation of record. The assignment did not contain the covenant required by section 25, subdivision 5, of the Lien Law. The bank contends that, in spite of the absence of the covenant, the assignment is valid and entitles

the assignee to priority over lienors in the distribution of the fund. Section 25, subdivision 5, provides in substance that every assignment of moneys due under a contract for a public improvement shall contain a covenant by the assignor that he will receive the moneys advanced by the assignee as a trust fund to be applied first to the payment of claims of specified creditors under the contract.

Subdivision 6 of the same section declares the advances under the assignment trust funds in the hands of the contractor, and makes any diversion by the contractor larceny. Both subdivisions were enacted simultaneously by chapter 859 of the Laws of 1930.

It is rather difficult to understand what objective the Legislature was trying to achieve when it enacted subdivision 5. It could not have been to impress a trust on the advances, because that is done any way by subdivision 6, regardless of any provision in the assignment. Nor could the purpose have been to hold the assignee responsible for the proper application of the moneys, because the subdivision expressly absolves the assignee from that responsibility. The only apparent purpose is that the trust character of the advances was to be brought home to the assignor by means of his own covenant, thus precluding the diversion of the fund through ignorance of the statute.

If the bank's contention in this case is correct, the statute is entirely meaningless because no one has any incentive to obey it. The assignor's responsibility, both criminal and civil, is the same with or without the covenant. He loses nothing by its omission. If the assignee likewise sacrifices no right by disregarding the statute, it might as well never have been enacted. I cannot take that view. The requirement that the covenant be included in the assignment itself, coupled with the fact that this requirement is to be found in the same section of the law which governs priorities between assignees and lienors, convinces me that the intention of the statute was that assignees must see to the inclusion of the covenant at the peril of losing their priority through its omission.

The bank contends that the statute is merely directory. Its language, however, is mandatory. The recognized rule is that when the act to be done concerns the public interest, or the rights of third persons, even permissive words in a statute will be construed as mandatory. (*People ex rel. Cayuga Nation* v. *Land Comrs.*, 207 N. Y. 42; *People ex rel. Doscher* v. *Sisson*, 222 id. 387.) The act commanded by this section is of that character. If the statute is mandatory, compliance with its command is a condition precedent to the validity of an act done under it. (*People ex rel. Lawton* v. *Snell*, 216 N. Y. 527, at p. 534.)

The rights which an assignee enjoyed at common law are now limited by statute. Formerly, an assignee, merely by virtue of his assignment, took precedence over subsequent lienors. (*Bates* v. *Salt Springs Nat. Bank*, 157 N. Y. 322.) In 1897 the Legislature limited the rights of assignees by the enactment of section 15-a,* now section 16, requiring the filing of an assignment as a prerequisite to its validity. (*Arrow Iron Works, Inc.*, v. *Greene*, 260 N. Y. 330.) Strict compliance with that section is required. (*Cullen Contracting Co., Inc.*, v. *Village of Long Beach*, 184 App. Div. 957.) In 1930 the Legislature, by enacting section 25, subdivision 5, imposed a further limitation on the rights of assignees by requiring the trust covenant in the assignment. That section must also be complied with, and, although the statute does not say that the omission of the covenant shall invalidate the assignment against lienors, I conclude that such was the intention. It should be noted that the right of the assignee to priority over subsequent lienors is now statutory (§ 25, subd. 1), and the fact that the provisions conferring priority are coupled in the same section with the provision requiring the trust covenant indicates that the one was to depend upon compliance with the other.

Section 25, subdivision 1, now contains an express exception to that effect in its opening clause, " except as provided in section five." As thus used, the word " section " appears to mean " subdivision." That clause was the result of an amendment made in 1932, and was absent from the statute when this assignment was given. The conclusion reached on this branch of the case is in accord with *Lanna* v. *Gates, Inc.* (142 Misc. 171), and *Butts* v. *Randall* (145 id. 708). *Hinds Co.* v. *Common School District No. 3* (242 App. Div. 158) holds nothing to the contrary.

The judgment dated June 12, 1935, in so far as appealed from, and the judgment dated October 16, 1935, dismissing the second cause of action in the amended complaint and the counterclaims against defendant Tarrytown National Bank & Trust Co., should be affirmed, without costs.

Present — LAZANSKY, P. J., CARSWELL, DAVIS, ADEL and CLOSE, JJ.

Judgment dated June 12, 1935, in so far as appealed from, and judgment dated October 16, 1935, dismissing the second cause of action in the amended complaint and the counterclaims against defendant Tarrytown National Bank & Trust Co., unanimously affirmed, without costs.

---

* See Laws of 1907, chap. 692.