IN RE APPEAL OF THE ROADMIX CONSTRUCTION CORPORATION.

ROADMIX CONSTRUCTION CORPORATION, APPELLEE, V. STATE OF NEBRASKA, APPELLANT.

9 N. W. (2d) 741

FILED MAY 28, 1943. No. 31400.

 

*Walter R. Johnson, Attorney General,* and *Herbert T. White,* for appellant.

*Roland Max Anderson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

WENKE, J.

This action for damages for breach of a contract was commenced by the Roadmix Construction Corporation, appellee herein, filing its claim, with the auditor of public accounts, in the sum of $20,491.83 against the state of Nebraska, appellant herein, for work, labor, materials, supplies, and equipment as therein set forth by virtue of a contract entered into with the department of roads and irrigation on August 1, 1936, for the construction of 6.3 miles of bituminous sand surface on project No. 203-A in Antelope county, Nebraska, a federal aid project, which was completed and accepted on September 27, 1937. From a disallowance thereof appellee appealed to the district court for Lancaster county and in its petition on appeal claimed the amount thereof to be due for the following:

A. Amount of money retained by the state of Nebraska on Estimate No. 11, dated May 23, 1938 $ 2,573.88

B. 34,058 gal. of M-C-2 asphaltic oil applied on the work by direction of engineers, accepted by the state and unpaid at 9c per gallon 3,260.79

C. Extra manipulation and mixing expense due to erroneous directions of engineers

as to oil content to be applied to the aggregate to wit:

1. Pay roll 3,175.67
2. Gas and oil consumed by equipment 2,361.19
3. Equipment rental 6,469.47
4. Repairs on equipment 732.65
5. Supervision, insurance, petty cash
 expense 1,362.18
G. Demurrage on 9 cars M-C-2 road oil on
 job and ready to be used 556.00

Total $20,491.83

for the reason that prior to September 27, 1937, the appellee fully performed the contract by completing the road according to the provisions of the contract and the same was on said day inspected and approved and accepted but in the construction thereof the appellee alleges that the appellant, through its engineers in the field, mistakenly and erroneously sampled and tested the soil in the road for the purpose of determining the amount of oil that should be used and because of these mistaken and erroneous tests the oil requirements so calculated were insuffcient, and when added to the surface material the appellee was not able to mix the surface in the manner desired and additional manipulation and mixing, together with additional oil, was required, and because appellant's engineers misdirected the mixing and manipulation of the surface material after the oil was added it became dry and overaerated, filled with oil balls and dry streaks of surface material and as a result the appellee was damaged thereby for the additional labor, materials, work, supplies, and equipment as in the claim set forth, all of which constituted a breach of the contract. For the reasons herein set forth and for the further reason that possession of the highway for work was withheld from August 1 to August 8, 1936, the time limit as fixed by the contract was waived, together with the liquidated damages therefor. That at all times the appellee notified the appellant's engineers, either orally or in writing, that it expect-

ed compensation for the extra work and materials required because thereof and demanded a written order or supplemental contract and agreement therefor which they failed and refused to give. Praying for a judgment requiring the proper officers to approve and allow the claim and issue a warrant for the amount thereof, with interest, to the appellee.

To this petition on appeal the appellant, and all other defendants, filed an answer admitting the corporate capacity of the appellee and the contract entered into by it with the appellant through the department of roads and irrigation, but denying all other allegations of appellee's petition, and further alleging the tests of the surface material on the highway were accurate and made by approved methods and indicated the proper amount of oil to be added; that the instructions given by the engineers in charge as to manipulation were proper and correct and if followed a proper road would have been obtained, but due to appellee not having proper road construction equipment and not applying the oil in accordance with instructions given but in a careless and negligent manner, a greater depth of soil was included in the mix than contemplated by the contract and specifications and as a result thereof the quantity of oil was insufficient; that the mixing and manipulation were done in a careless and negligent manner and due thereto oil balls formed in the mix and the same became overaerated, as a result of which it was not in proper condition to be accepted in the fall of 1936; that under the terms of the contract all of the work which was rejected was required to be remedied or removed and replaced in an acceptable manner by the appellee at its own expense; that appellee failed to complete the work within the time provided in the contract and was therefore subject to the provisions as to liquidated damages; and that all damage suffered was the result of careless, negligent, and incompetent manner of performing the terms of the contract. Praying that the claim on appeal be dismissed.

Appellee's reply denies the allegation that it was careless

or negligent in the mixing and manipulating of the surface materials, alleges it had sufficient and proper equipment; that mixing of the surface soil at a greater depth than contemplated was at the direction of the appellant's engineers in charge over appellee's objections and caused by errors and mistakes of the engineers; that mixing to a certain depth was a physical impossibility because of the loose condition of the soil; that the oil balls were due to shortage of oil and excess of manipulation; that the appellant waived its claim to liquidated damages and praying for the allowance of its claim.

The matter was tried to the court, jury being waived, and the trial court found that on August 1, 1936, appellee and department of roads and irrigation of the state of Nebraska entered into a contract for the construction of the road described as Federal Aid Road No. 203-A in Antelope county, Nebraska, and appellee proceeded with the construction thereof and followed the direction of the appellant's engineers in charge as to quantities and character of material used, mixing and manipulation thereof, the machinery and equipment to be employed, and was duly approved on September 27, 1937; that while the road was not completed within the time provided in the contract, the right to liquidated damages was waived by the appellant by its delay in not permitting appellee to engage in the construction of the work promptly on execution of the contract, in not permitting appellee to apply sufficient oil, in the manner the appellee was forced to use its machinery, and in renouncing its claim thereto; that appellee followed directions of the engineers in mixing and manipulating but because the amount of oil added was insufficient it caused a great deal of additional manipulation and mixing; that the formula for determination of the amount of oil to be used was based on erroneous tests and calculations on the part of appellant's engineers; that appellee protested and gave notice that it could not be performed unless more oil was applied and gave notice to the engineers that it would claim damages in consequence of the extra labor, material,

and hired equipment which it was required to use, and found appellee was entitled to recover damages in consequence thereof as follows:

| | |
|---|---:|
| For money retained by the state | $ 2,573.88 |
| For 34,058 gallons of oil | 3,065.22 |
| For extra mixing and manipulation and for gas and oil for construction equipment | 5,681.51 |
| For equipment rental | 4,015.80 |
| For equipment repairs, etc. | 656.35 |
| For supervision, insurance and petty cash | 644.54 |
| Total | $16,637.30 |

That appellee at all times mixed and manipulated the aggregate skilfully and in good and workmanlike manner and used proper and approved equipment in so doing; that the appellant is not entitled to detour and maintenance costs. The state auditor and secretary of state were directed to allow the claim in the amount of $16,637.30 and that the auditor of public accounts issue a warrant to the appellee for the amount as herein found due on the claim.

From this judgment appeal has been taken to this court by the appellant, hereinafter referred to as the state.

This being an action for damages for breach of a contract with the state, through the department of roads and irrigation, it was properly instituted by filing a claim therefor with the auditor of public accounts and from a disallowance thereof to appeal to the district court for Lancaster county, for as held in *McNeel v. State*, 120 Neb. 674, 234 N. W. 786, and as stated in *Scotts Bluff County v. State*, 133 Neb. 508, 276 N. W. 185: "In view of the constitutional and statutory provisions relating to claims against the state and the judicial interpretations thereof, the legislation conferring upon district courts jurisdiction to hear and determine 'all claims against the state filed therein which have previously been presented to the auditor of public accounts, and have been in whole or in part rejected or

disallowed' (Comp. St. 1929, sec. 27-319) includes 'any matter founded upon or growing out of a contract, expressed or implied, originally authorized or subsequently ratified by the legislature,' and such claims must be presented to the auditor of public accounts, with right of appeal from his decision to the courts, and may not in violation of this requirement be presented to the courts in the first instance."

Nor is the claim made here for damages for breach of the contract such a claim that recovery cannot be had thereon because it arises in tort for which the state cannot be held liable unless generally so provided by statute. The law applicable thereto is stated in 1 C. J. 1016, as follows: "The mere breach of an ordinary contract does not constitute a tort, and if there is no liability except that arising out of a breach of a purely contractual duty, the action must be in contract, and an action in tort cannot be maintained," which is quoted with approval in *McNeel v. State, supra,* while as stated in 1 C. J. 1020, "The gist of the action (for tort) is a wrong or breach of duty imposed by law, as distinguished from a mere breach of contract."

This being a law action in which a jury was waived and the case tried to the court, the court's findings have the effect of a jury's verdict and will not be set aside on appeal unless clearly wrong, *Helleberg v. City of Kearney,* 139 Neb. 413, 297 N. W. 672, and there is a presumption that the court, in arriving at a decision, considered only such evidence as was competent and relevant and this court will not reverse a case so tried because other evidence was admitted, *Nelson v. Nelson,* 133 Neb. 458, 275 N. W. 829, and that the trial court, having had the opportunity of hearing the witnesses and observing their general demeanor while testifying, was the best judge of the credibility of the testimony of each and every witness before the court, *Nelson v. Nelson, supra.*

The state is as much bound by the terms of its contracts as are individuals and generally a contract between individuals and the state for construction of highways, and all other public improvements which the state is authorized to

make, should be construed and liabilities determined by the same rule as governs contracts between individuals. This rule should in no way be permitted to conflict with the universally recognized and enforced rule that neither a state nor the United States, in the absence of a general statute, can be made to respond in damages for the torts of its officers or agents.

This contract, and the rights of the parties thereunder, should be construed in the manner provided by section 27-322, Comp. St. 1929: "The court in which such action may be brought shall hear and determine the matter upon the testimony according to justice and right, as upon the amicable settlement of a controversy, and shall render award and judgment against the claimant, or the state, as upon the testimony right and justice may require," which stattute has been cited and followed in *Lyman-Richey Sand & Gravel Co. v. State,* 123 Neb. 674, 243 N. W. 891, and many other Nebraska cases. This, however, does not mean that this court can reform or rewrite the terms of the contract nor interpret them, unless ambiguous, other than as the parties have made and clearly set them forth therein but must apply the facts to the contract as made.

Could there be a waiver of those provisions of the contract requiring written orders or supplemental contracts for increased quantities due to alterations in the plans or for extra work? Authorities are cited sustaining this position, including our own, as to private parties; however, in the case of *State v. Cochran,* 113 Neb. 846, 205 N. W. 568, we held: "Executive state officers have no general authority to enter into executory contracts thereby binding the state, and the state is not bound by contracts made by them in excess of their authority." And as stated in *Campbell Bldg. Co. v. State Road Commission,* 95 Utah, 242, 70 Pac. (2d) 857: "The state cannot be held for the acts of its engineer beyond the powers conferred by law or the written contract. *Clark County Construction Co. v. State Highway Commission,* 248 Ky. 158, 58 S. W. (2d) 388; *California Highway Commission v. Riley,* 192 Cal. 97, 218 Pac.

579; 29 C. J. 610. Any person doing business with the state by way of contract or otherwise must take notice of the limitations on the authority of the officers or agents of the state, since they may act only within the scope of their lawful powers. *Clark County Construction Co. v. State Highway Commission, supra; California Highway Commission v. Riley, supra.* The state road engineer cannot waive a provision in the contract that extra work, before it can be paid for, must have been authorized and the prices fixed by a work order in writing. *Kansas City Bridge Co. v. State,* 61 S. Dak. 580, 250 N. W. 343; *Ambaum v. State,* 80 Wash. 122, 141 Pac. 314; *Crane Construction Co. v. Commonwealth,* 290 Mass. 249, 195 N. E. 110." Employees, agents, and officers of the state are limited in their capacity to act for the state to the express authority given them by the Constitution or statutes and the provisions of contracts executed by authority thereof and authorized thereby and they cannot waive such provisions and the state be bound. Parties dealing with the state must take notice of this limitation of their authority as they can act only within the scope thereof. However, the question of waiver has no application here for a careful examination of the claim for damages made by appellee for labor, material, rental on equipment, and miscellaneous expenses due to a breach of contract shows it does not arise out of any increased quantities of labor and material due to alterations in the plans or specifications or to extra work or material within the provisions of the contract, but are sought to be recovered by reason of a breach of the contract caused by appellant failing to have the road bed ready, by delay in making the tests of the surface material of the road and in preparing the pits to obtain fines and sand to be added thereto, because of mistakes and errors in the tests of the road surface material to obtain the amount of M-C-2 oil that should be added thereto by reason of which too small an amount was added and as a result oil balls formed and gravel streaks remained in the surface material, and due to misdirection in the mixing and manipulation thereof that same

became overaerated, dry, and full of oil balls, all of which prevented the work from being accepted in the fall of 1936.

The principal question involved here is whether or not appellee should have been permitted to introduce evidence to show the reasons why the surface material or aggregate on the road, as it was mixed in the fall of 1936, was not acceptable to the state and what caused the necessity for additional manipulation and mixing so that it was acceptable on September 27, 1937, and thereby to recover damages for the labor, material, use of equipment, and miscellaneous expense had by reason thereof. The contract entered into between the parties contains the following provisions:

"The intent is to prescribe a complete work or improvement which the Contractor undertakes to do, in full compliance with the plans, these specifications, the special provisions, proposal, and contract."

"The Engineer shall decide any and all questions which may arise as to the *quality or acceptability* of materials furnished and *work performed* and as to the *manner of performance* and rate of progress of the work and shall decide all questions which may arise as to the interpretation of the plans and specification, and all questions as to the acceptable fulfillment of the contract on the part of the Contractor, and as to compensation. *His decision shall be final* and he shall have executive authority *to enforce and make effective such decisions and orders as the Contractor fails promptly to carry out.*"

"All work which has been *rejected shall be remedied, or removed and replaced, in an acceptable manner by the Contractor, at his own expense, and no compensation shall be allowed him for such removal or replacement.*" (Italics ours.)

The foregoing provisions of the contract clearly and expressly provide that the purpose of the contract is for a completed work which the contractor agrees to do and that the quality of his work and the acceptability thereof are questions for final determination of the engineer, which, under the provisions of the contract refers to "The State

Engineer, acting either directly or through an assistant or other representative duly authorized by the Engineer, such assistant or representative acting within the scope of the particular duties assigned to him, or of the authority given him," and that his decisions shall be final and that all work which has been rejected shall be remedied or removed and replaced, in an acceptable manner by the contractor, at its own expense, and no compensation shall be allowed it for such removal or replacement. Generally, the courts have held that parties to a contract may agree that classification, quantity, and quality of work done or things furnished shall be left to the judgment of a third person and his estimate or decision shall be final, and as held in *Peterson v. State,* 114 Neb. 612, 209 N. W. 221, and the authorities therein cited: "It may be observed generally that, under the federal and state authorities, it is competent for parties, in this class of general construction work, to designate in the contract some person or official to pass upon and decide all disputed questions that may arise in the course of construction, and that his decision shall be final." A general survey of the authorities is summarized in the case of *State Highway Department v. MacDougald Construction Co.,* 189 Ga. 490, 6 S. E. (2d) 570, and the rule announced in *Peterson v. State, supra,* is there announced and followed except that the decision of one so authorized is binding upon the parties thereto except when it is based upon fraud, gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. Therefore, under the express and clear provisions of this contract the acceptance or rejection of the work was a matter for final decision of the engineer and having made that decision by rejection of the work in the fall of 1936 it was then appellee's duty, under the provisions of the contract, to remedy the work at its expense and if it failed to do so, the state, under the provisions of the contract could have had it done at the appellee's expense, and no evidence should have been received in regard thereto except as hereinafter discussed. It is further contended in the brief of appellee that this is

not an action to attack a final estimate and therefore these decisions are not applicable. However, the question of accepting the work is a condition that is prior to the final estimate for as stated in the contract, "Final acceptance is stipulated to mean a written final acceptance by the Engineer, followed by final payment in accordance with the 'Engineer's Final Estimate'" and the appellee cannot avoid the express provisions of its contract by bringing a suit for damages for a breach thereof on the very subject-matter as to which it has contracted the engineer's decision should be final, nor can we, as a court, under the construction of section 27-322 of the statute, avoid the express provisions thereof but can only do justice and right in accordance with the agreements contained therein.

While the appellee in its claim and petition on appeal did not attack the decision of the engineer for fraud, gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment, however, the record being here for our consideration, therefore under the provisions of section 27-322, Comp. St. 1929, we will examine it for that purpose. While an extended recitation of the facts disclosed in the voluminous record would unnecessarily extend this opinion, we will generally set forth the matters upon which the evidence conflicts. Appellee's evidence shows that from August 1 to August 8, 1936, when it was ready to proceed with the work it was prevented from doing so by failure of the state to turn over the road; that it was delayed in adding sand and fines to the road surface where needed because the state delayed in making tests to determine where sand and fines should be added to the road surface and then delayed in locating and opening the pits from which sand and fines might be taken for that purpose; that it was not able to prepare the road so as to be acceptable to the state in the fall of 1936 because the engineers in charge made errors and mistakes in testing the surface material, particularly with reference to the fines or material that passes a 200 sieve, and thereby obtained an erroneous S factor in the state's formula, that the state used 1.1 K factor in its

formula whereas subsequently thereto and in the year of 1937 it used a K factor of 1.15, all of which caused error in the computation of the amount of oil that was added to the surface material in 1936 and that the amount added was below what was necessary to obtain an acceptable road and that the appellee informed the engineers of this fact on numerous occasions, both orally and written; that the engineers in charge of the work for the state, in their supervision thereof, misdirected the mixing and manipulation of the surface material after the oil was added thereto in that they directed more material to be mixed than was necessary to obtain the proper depth of the road bed, that they failed to provide or permit the making of a mixing base or oil surface upon which to perform the mixing or manipulation, that they directed the continued mixing thereof long after the five-day period provided in the contract thereby causing the surface material to become overaerated and dry, oil balls to form therein, streaks of dry surface material to remain therein, and to generally cause a condition to exist that prevented it from being acceptable to the state. On the other hand, the state's evidence shows the appellee was not ready to commence work until August 8, 1936, that the pits for fines and sand were located and opened as soon as appellee was ready to use them and likewise the tests of the road material were made for the purpose of determining where fines and sand should be added prior to the time appellee was ready to add and mix the same, that the field tests of the state of the surface material for the purpose of determining the amount of oil that should be added were carefully and accurately made and determined the correct factors to be used in the formula for computing the amount of oil that should be used on the road, that the directions as to mixing and manipulation were correct and properly made but due to the lack of the proper equipment or a sufficient amount thereof, due to the inexperience of those in charge and the unskilful manner in which they handled the equipment, the oil was improperly mixed and the surface material improperly manipulated causing oil balls, over-

aeration, dry streaks of surface material which made it unacceptable as a road surface. To extend this discussion into more detail would serve no useful purpose for it clearly presents a conflict as to the cause of the unsatisfactory condition of the mat prepared in 1936 on this road and not accepted by the state. But these matters are not here for consideration by reason of the express provision of the contract except as to fraud, gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment. While it does appear from the evidence that there was not the best of feeling between the project engineer and appellee's men in charge of the work, however, the evidence falls far short of showing any fraud, gross mistake as would necessarily imply bad faith, or a failure to exercise an honest judgment in the decision rejecting the work.

The appellee has cited those authorities dealing with impossibility of performance or impossibility of performance due to defects in the plans and specifications but they have no application here. Nothing in the evidence shows that the plans and specifications were in any way defective so as to make performance impossible. The evidence shows that to prepare a four-inch bituminous mat on a loose sandy surface on a newly graded road without a mixing floor or oil base was an extremely difficult and exacting piece of work. However, the evidence shows that appellee had the road examined by one experienced in the construction of roads of this type prior to making its bid, knew of the loose condition of this road and the type of surface material, knew that the plans and specifications did not call for a mixing surface or oil base and that it would be difficult to mix and manipulate the four-inch bituminous mat required by the contract. While it was an extremely difficult piece of work, it was not impossible to perform and these matters should have been taken into consideration by the appellee in making its bid.

A further question presents itself in regard to 34,058 gallons of M-C-2 oil that were used by appellee in connection with building this road but which the record shows have

never been paid for. There is no question about the quality thereof and under the provisions of the contract, which intended to prescribe a complete improvement, the appellee was to be paid nine cents a gallon for all "asphaltic materials which are applied to the combined aggregate, or are used in seal coats, or placed in storage for future maintenance by the state, measured as herein provided, shall be paid for at the contract unit price for this item." The contract further provides for final payment in accordance with engineer's final estimate after the acceptance of the work. It appears that after the acceptance of the work the engineer did on April 29, 1938, issue a final estimate but thereafter on May 23, 1938, issued another progress estimate and since then has issued no final estimate. The contract provides the engineer shall decide any and all questions which may arise as to the quality or acceptability of materials furnished and work performed and his decision shall be final. It appearing that the quality of the oil is without question and having been used in the construction of the completed improvement the appellee is entitled to be paid therefor at the contract price.

In refusing to permit the state to deduct the liquidated damages, as in the contract provided, we think the lower court was right. Not, however, on the theory of waiver, for as herein held, the employees, agents, and officers of the state cannot waive its rights except as they are expressly authorized by statute or contract. However, on disputed evidence the court found that delay was caused by the state and the general rule is as stated in 9 Am. Jur. 37, sec. 50: "It appears to be a well-settled rule that if a contractor agrees to do certain work within a specified time, and he is prevented from performing the contract by the act or default of the other party, or by the acts of persons for whose conduct the latter is responsible, the delay thus occasioned is excused, and the contractor may not be held liable, under a provision for liquidated damages or otherwise, for his noncompliance with the terms of the contract."

While the general rule is that interest is not to be award-

ed against the state unless expressly so provided by statute or the terms of the contract, however, in this contract the state agreed to pay for everything furnished thereunder promptly upon the completion and acceptance of the work and having failed to do so should pay interest thereon from the date of the acceptance.

The judgment of the lower court is therefore reversed with directions to enter judgment for appellee for $5,834.67 with interest at 6 per cent. from September 27, 1937, being for 34,058 gallons of M-C-2 oil at nine cents per gallon and for the balance retained by the state of $2,573.88 with directions to the proper authorities to allow the claim in that amount and to issue a warrant therefor.

REVERSED, WITH DIRECTIONS.