Robert HUMPHREYS, Commissioner, Department of Highways of the Commonwealth of Kentucky, and the Department of Highways of the Commonwealth of Kentucky, Appellants,

v.

J. B. MICHAEL & CO., Inc., Appellee.

Court of Appeals of Kentucky.

Dec. 16, 1960.

Jo M. Ferguson, Atty. Gen., Astor Hogg, Chief Asst. Atty. Gen., Edward A. Marye, Jr., Asst. Atty. Gen., for appellant.

Joseph J. Leary, Smith, Reed & Leary, Frankfort, for appellee.

WADDILL, Commissioner.

The appeal is from a judgment establishing a balance of $225,880.78 due from the Commonwealth to J. B. Michael and Company, contractor under a road construction contract. The cross-appeal questions the correctness of that part of the judgment which dismissed the claim for recovery of interest allegedly due by reason of the failure of the Commonwealth to pay the amount owed under the semi-final estimate at the time prescribed by the contract.

J. B. Michael and Company, appellee and cross-appellant, hereinafter called plaintiff, filed this action against the appellants, Department of Highways of the Commonwealth of Kentucky and the Commissioner of Highways, referred to hereinafter as defendant, seeking a declaration of rights under a written contract executed by the parties involving the construction of a section of a highway located in Hardin and Bullitt Counties, designated as Kentucky-Turnpike Project Number 1. Plaintiff sought to recover: Damages for delay as a result of an alleged breach of the contract; compensation for additional expense incurred by reason of a suspension of work on the project allegedly brought about by defendant pursuant to a provision of the contract; unpaid claims for certain items of extras, such as, quantities of stone used for widening shoulders of the road and certain seeding and sodding of the shoulders of the highway; interest on $256,370.63 from November 7, 1956, the date when this amount was due plaintiff under the contract, to May 22, 1957, when plaintiff received payment of this principal sum.

The substance of the essential facts is that on October 29, 1954, the parties entered into a written contract by the terms and conditions of which plaintiff agreed to construct, for the price of $2,989,038.10, 12.3 miles of two 24' lanes of reinforced concrete pavement with improved shoulders, including seeding and sodding. Plaintiff's work under this contract was to be completed not later than November 23, 1955. This contract, including related documents, was designated contract No. 7, and was prepared by the defendant through its authorized representatives.

Contract No. 7 and its related documents contain certain provisions which are relied upon by plaintiff as having particular significance in the determination of this controversy. These provisions in pertinent part state:

"(a) It is mutually agreed by and between the parties that time is of the essence of this contract, * * *.

"(b) The Paving Contractor is here advised that the following contracts, within the limits of this Contract, have been let and construction is now in progress:

"Contract 1–A, 1–B, & 1–C (Grading and Drainage)

    Completion Date: July 1, 1955
    Contractor: Traylor Bros., Inc.
              Evansville, Indiana

"Contract 4 (Bridges)

    Completion Date: September 9, 1955
    Contractor: Ruby Construction Co., Inc
              Madisonville, Kentucky

"In addition the Grading and Drainage Contractor has been directed to complete at least 50 percent of the total lineal length of grading and drainage construction within the outside shoulder lines on or before April 15, 1955.

"(c) The Grading Contractor is required to complete in a manner acceptable to the Engineer, at least fifty (50) percent of the total lineal length of grading and drainage construction, and within the outside shoulder lines on or before April 15, 1955. The completed portion of the work within the limits of the grading contracts shall be in one continuous section or in not more than two separate and continuous sections of approximately equal length.

"The Grading Contractor is also required to complete the grading in the concession area by November 1, 1954.

"The Bridge Contractor is required to complete Bridge A–6 by May 1, 1955 and Bridge A–5A by May 15, 1955. All other bridges are to be completed by September 9, 1955."

The representatives of the defendant were advised through progress reports that the grade and drain work on the section which was to be paved by plaintiff was not being completed according to schedule. The original schedule for the grade and drain work called for 50% of this work to be completed by April 15, 1955, and entirely completed by July 1, 1955. Actual progress charts however reflected that this work was only 26% completed on November 1, 1954, which was 35% behind schedule. Delays in constructing the grade and drain were attributable to various conditions, such as, unusual amount of inclement weather, some inefficiency of the grade contractor, extra work and overruns and failure of the defendant to promptly furnish necessary rights-of-way.

Notwithstanding the fact that defendant's representatives knew that it was improbable that the grade on the road would be 50% completed and ready for paving by April 15, 1955, the defendant issued an order on November 1, 1954 for plaintiff to commence work by November 10, 1954. In compliance with this order, plaintiff immediately began assembling materials, equipment, and crews at the job-site.

On April 15, 1955, the grade upon which the concrete was to be laid was not in condition to receive the pavement, nor were the shoulders of the road ready for the improvement. The equipment and personnel which plaintiff had brought to the job-site for the performance of its contract and in accordance with the directions of the defendant's engineers were idle and were held in a state of abeyance. Likewise, subcontractors, with which plaintiff had made contracts based upon the time limitations which were contained in its contract, were precluded from performing the work required by their subcontracts.

The delay in furnishing plaintiff with grade ready for paving was the subject of frequent conferences following April 15, 1955. At these conferences defendant's representatives would assure plaintiff that in a short time sufficient grade would be available for plaintiff to begin paving operations, but as a matter of fact the period of suspension of the paving operations was, at that time, indefinite. During May, 1955, it

was apparent to the plaintiff that further delay could prevent the completion of the paving operations within the time limitations of the contract. On May 30, 1955, plaintiff advised the Commissioner of Highways of the situation which had arisen and continued to bring the matter to his attention through certain letters. The purpose of these communications was to give notice that plaintiff would expect additional compensation for any increase in costs incurred by reason of not having received the roadway for paving within the time specified in its contract.

The work which the grade contractor had contracted to perform on the project continued to remain in unacceptable condition for paving until July 25, 1955. On that date plaintiff received 7,700 lineal feet of roadway for paving, and 50% of the completed grade on September 9, 1955. Thereafter, grade ready for paving was made available to plaintiff in varying amounts until December 13, 1955, when plaintiff received all of the completed grade.

It was established that plaintiff completed its paving operations in 703½ working hours. It was also shown that if the grade had been made available to plaintiff between April 15, 1955 and September 15, 1955, as originally scheduled by defendant, there would have been 750 working hours available when plaintiff could have completed the paving operations required by its contract without incurring any additional costs.

Since it was established that delay in furnishing plaintiff with completed grade impeded the commencement, progress, and completion of the work to be performed by plaintiff under its contract with defendant, plaintiff asserts it is entitled to recover damages for breach of contract on either of two theories: The failure of defendant to furnish plaintiff grade ready for paving at the time agreed upon; or, active interference by the authorized representatives of defendant in requiring plaintiff to maintain crews and equipment at the job-site in a state of readiness to proceed with its work despite the delay encountered in the completion of the grade and drain work.

Plaintiff also sought alternative relief for additional expenses incurred by reason of suspension of work as provided for by section 1.67 of the Standard Provisions. This Section provides:

"Suspension of Work"

"The work may be suspended for two general reasons:—(a) The decision by the Commissioner [of Highways] that it is advisable to do so in its own best interests, and (b) Unsuitable weather or other conditions considered unfavorable for suitable prosecution of the job or due to failure of the Contractor [Plaintiff] to carry out orders given or to comply with any or all of the provisions of the Contract.

"(a) If the Commissioner [of Highways] deems it advisable for its own interest, it may notify the Contractor [Plaintiff] in writing to suspend work on all or any part of the job, and the Contractor [Plaintiff] shall do no work where so suspended until he has received written notice from the [Defendant's] Engineer to resume work. * * *. Should the suspension be for more than ten (10) days and should the Contractor [Plaintiff] be put to additional expense on account thereof, he shall have the right to file with the Commissioner [of Highways] a statement showing the character and amount of such additional expense and, if the Commissioner [of Highways] deems it a proper charge, he [Plaintiff] will be reimbursed therefor. * * *.

"(b) The [Defendant's] Engineer shall have authority to temporarily suspend the work, * * *. The suspension shall not constitute grounds for claim for damages or extra compensation by the Contractor [Plaintiff]; nor shall it constitute grounds for claim by the Contractor [Plaintiff] for an extension of time unless the suspensions

be for more than ten (10) days and for a reason other than the failure of the Contractor [Plaintiff] to carry out orders given or to comply with provisions of the contract. * * *."

Defendant sought to defeat the claims asserted by plaintiff on the grounds that the delay encountered by the parties in the performance of their contract was foreseen and provided for by the terms and conditions of their contract. Under Section 2.6 of the Special Provisions, defendant reserved the right to have certain work performed on the project by contractors other than plaintiff. This section (2.6) also contained this provision:

"The contractor [plaintiff] shall agree, and hereby does agree, to make no claims against the Department [defendant] for additional compensation due to delays or other conditions created by the operations of such other parties [contractors other than plaintiff]."

The first paragraph of Section 1.65 of the Standard Provisions reads:

"The construction herein provided for is to be completed within certain times as set forth in Section 2, 'Special Provisions' and payments provided for the job, in accordance with the prices bid therefor in the Proposal, shall be understood and agreed to cover all risks and expenses of delay except as otherwise herein provided. [The term 'As otherwise provided herein,' as it appears above, has reference to the following grounds upon which defendant could grant plaintiff extensions of time: Extra work assigned to plaintiff by defendant; unusual amount of inclement weather; delays caused by non-completion of essential work of other contractors; failure of defendant to timely procure necessary rights-of-way; and, lack of equipment or supplies due to conditions stemming from a national emergency]."

Subsection (b) of Section 1.67 of the Standard Provisions contained this restriction when plaintiff's work on the project was suspended:

"The suspension shall not constitute grounds for claim of damage or extra compensation by the contractor [plaintiff]; nor shall it constitute grounds for claim by the contractor [plaintiff] for an extension of time unless the suspension be for more than ten (10) days and for a reason other than the failure of the contractor [plaintiff] to carry out orders given or to comply with provisions of the contract. * *."

Defendant asserts that the conditions and restrictions contained in Sections 1.65 and 1.67 of the Standard Provisions and in Section 2.6 of the Special Provisions not only constitute no-damage clauses which preclude plaintiff from recovering for breach of contract but also provide an exclusive remedy for suspension of work on the project.

The trial judge entered his findings of fact and conclusions of law, and, in effect, held that defendant had breached its contract with plaintiff and that the contract did not absolve defendant of liability for damages resulting from the breach thereof. The trial judge further held that defendant had ordered a suspension of work pursuant to Section 1.67 of the Standard Provisions of the contract and that plaintiff was entitled to recover expenses incurred for this reason or alternatively, damages for the breach. A declaration of the rights of the parties was accordingly entered.

The judgment established that plaintiff was entitled to recover from defendant the sum of $225,880.78. Included within the judgment was the sum of $6,456, which was expended for quantities of stone used by plaintiff in the construction of the project, and the sum of $7,274.19, which was the cost of the work performed by plaintiff through its subcontractor, Pavement Controls, Inc., in sealing the joint of pavement. The trial judge decided that these opera-

tions were not required by the contract but were required by defendant's representatives as a result of change in the plans for the job entitling plaintiff to be compensated therefor. Since the grounds of appeal do not challenge the allowance of these two claims, totalling $13,730.19, the judgment to this extent is affirmed.

Generally, a party to a contract, who is not precluded by its terms from asserting a claim for damages due to delay in commencing or in completing performance, may recover damages if he can show that the delay was a breach of some express provision of the contract or of an implied obligation imposed upon the other party not to interrupt or hinder the progress of the first party. Charles I. Hosmer, Inc., v. Commonwealth, 302 Mass. 495, 19 N.E.2d 800; Blanchard v. Inhabitants of Blackstone, 102 Mass. 343; Gilbert & Barker Mfg. Co. v. Butler, 146 Mass. 82, 15 N.E. 76; Currier v. Gray, 252 Mass. 78, 147 N.E. 567; 5 Williston Contract (Revised Edition) Section 1293A. This rule, when applied to contracts let by public bodies, assumes that the work of the contractor was delayed, that the contractor was damaged by delay, that there was default on the part of the public authorities, and that such default was the cause of the contractor's delay. If any of these conditions are absent, recovery of damages by the contractor will be denied. The true principle is that acts of governmental bodies or its authorities, or their omission to act, even though they cause delay, will not make the public body liable in damages unless such acts constitute also some breach of the contract either expressed or implied. 43 Am.Juris., Public Works and Contracts, Section 98, page 841; Carroll v. United States, 67 Ct.Cl. 513. See also: 115 A.L.R. Annotation at pages 70, 71.

Assuming, without deciding, that the trial court correctly decided that defendant breached its contract with plaintiff, the parties may and did in the case at bar, contract with reference to delay. Sections 1.65 and 1.67 of the Standard Provisions and 2.6 of the Special Provisions, when interpreted and considered in connection with the other provisions of the contract, must be given meaning and effect to accomplish the purposes for which they are designed. By the terms of Section 2.6 of the Special Provisions, plaintiff agreed not to file a claim against defendant for additional compensation due to delays or conditions created by the operations of other contractors. By Section 1.65 of the Standard Provisions, plaintiff further agreed that payments made in accordance with the provisions of the contract covered all risk and expense of delay. This section does, however, provide grounds for which defendant could grant plaintiff extensions of time. (Plaintiff was granted extensions of time to complete its work on the project and defendant waived the collection of liquidated damages which plaintiff contracted to pay defendant in event plaintiff's work was not completed within the time limitations of their contract.)

This Court has determined that plaintiff is precluded from asserting claims for delay by the terms of the contract, and that the circuit court erred in holding to the contrary.

Plaintiff urges that it is entitled to recover damages from defendant notwithstanding the no-damage clauses of the contract, because defendant actively interfered with plaintiff's work. The active interference doctrine was recognized and applied in American Bridge Company, Inc. v. State, 245 App.Div. 535, 283 N.Y.S. 577, wherein the state ordered the contractor to continue preliminary work required by its contract in face of necessary stoppage or postponement of the work on the project itself. The state sought immunity under the no-damage clause of their contract and contended that it had not actively interfered with plaintiff's work because there was no stoppage of the work by the state. The New York Court rejected this defense and allowed damages, holding that it was not de-

lay but active interference by the state in ordering the contractor to continue with its work in face of necessary stoppage of operations that caused the damages sought by the contractor. See also: Heating Maintenance Corporation of New York v. State, Ct.Cl., 47 N.Y.S.2d 227; De Riso Bros. v. State, 161 Misc. 934, 293 N.Y.S. 436, and 10 A.L.R.2d Annotation at page 801.

In the case at bar defendant had not issued an order or directive to plaintiff to continue to keep its personnel and equipment at the job-site in a state of readiness to proceed with its work. Although plaintiff was assured that the grade would be ready for paving as scheduled, plaintiff was left free to make its own decision concerning the use of its personnel and equipment which had been sent to the job-site. Therefore, it is the view of this Court that there is no basis in fact to sustain a finding of active interference by the defendant in the present case. The same conclusion was reached in Mack v. State, 122 Misc. 86, 202 N.Y.S. 344 (affirmed without opinion in 211 App.Div. 825, 206 N.Y.S. 931), wherein it was held that the contractor could not recover damages upon the active interference theory (in view of a no-damage provision similar to that invoked in the case at bar) because there was no proof of any active interference by the state with the contract work. The court also rejected the contention that the no-damage clause in their contract was intended to cover only reasonable and not unreasonable delays and held that the purpose of the no-damage clause was to dispense with the necessity of deciding whether the delay was reasonable. Other cases in which similar results were reached are: F. N. Lewis Co. v. State, 132 Misc. 688, 230 N.Y.S. 517; A. B. Barr & Co. v. State, 127 Misc. 75, 215 N.Y.S. 313; Cascade Automatic Sprinkler Corp. v. State, 147 Misc. 420, 263 N.Y.S. 805; 247 App.Div. 226, 286 N.Y.S. 698; 248 App. Div. 922, 290 N.Y.S. 382.

■ Aside from the determination made herein disallowing damages, this Court fur-

ther holds that plaintiff's work on the project was not suspended as provided for by Section 1.67 of the Standard Provisions of their contract. This determination is reached because under this provision (1.67) plaintiff's work on the project could be suspended for these reasons: (a) When the Commissioner of Highways [defendant] "deems it advisable for its own interest"; and, (b) when the (project) engineer believed it was necessary (due to conditions unfavorable for suitable prosecution of work or failure of plaintiff to comply with the terms of the contract). Thus, the right to suspend the work encompassed by this contract was a discretionary prerogative which was exclusively reserved to the defendant for its sole benefit.

The facts and circumstances presented do not show, or even indicate, that defendant suspended plaintiff's work under Section 1.67 of the contract. The facts do establish that plaintiff's paving operations were delayed and also that defendant sought timely completion of the project. It follows that the trial judge erred in allowing plaintiff the additional expenses it incurred during the time its work on the project was delayed.

■ On cross-appeal, plaintiff contends that the trial judge erred in refusing to allow interest due by reason of defendant's failure to pay the amount owed under the semi-final estimate at the time specified by the contract. This contention is predicated upon the proposition that defendant breached its contract in this respect and interest is therefore allowable as the measure of damages for such breach. It is argued in behalf of defendant that to allow a recovery of interest against it is to ignore the "immunity doctrine" enunciated in prior decisions, such as Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S.W.2d 596, which insulates the defendant from claims of this character.

Upon reconsideration of this question, the Court has concluded and now holds that when an agency of the state is duly author-

ized to enter into contracts for the construction of its highways it is divested, to that extent, of the attributes of sovereignty and invested with the attributes of a private person. The same conclusion was reached in State Highway Commission v. Wunderlich, 194 Miss. 119, 11 So.2d 437; State v. Hartford Accident & Indemnity Co., 136 Conn. 157, 70 A.2d 109; Roadmix Const. Corp. v. State, 143 Neb. 425, 9 N.W. 2d 741.

In the instant case the defendant failed to pay plaintiff the amount due on the semi-final estimate at the time prescribed in the contract. Hence, it follows from our conclusion that the judgment insofar as it denies plaintiff such interest is reversed, with directions to enter judgment allowing plaintiff interest on its semi-final estimate from the time specified by the contract.

On the direct appeal the judgment is affirmed to the extent of $13,730.19 and is otherwise reversed; on the cross-appeal the judgment dismissing plaintiff's claim for interest is reversed, with directions to enter judgment allowing this claim as hereinbefore directed.

WILLIAMS, J., did not participate in the consideration or decision of this case.

BIRD and PALMORE, JJ., dissent from that part of the opinion which denies plaintiff damages and expenses resulting from defendant's breach of contract and from suspension of work.

MONTGOMERY, J., dissents from that part of the opinion which allows plaintiff to recover interest because he would apply the "immunity doctrine" as stated in Bankers Bond Co. v. Buckingham, 265 Ky. 712, 97 S.W.2d 596.

PALMORE, Judge (dissenting).

Realizing that this is a close case, it is with some reluctance that I register this dissent from the majority opinion. However, I cannot avoid the conviction that if the Commonwealth were not involved the decision would have been different, and I do not accept the philosophy that in its dealings with the public the state should be held to a lesser standard of responsibility than is applied to those with whom it deals.

The contract which has been construed here was prepared by the state and therefore should be strictly construed in favor of the contractor. This litigation would not have arisen had the contract included even one simple, direct, categc..cal sentence stating explicitly that the Highway Department would not be responsible for delays resulting from the delays and defaults of other contractors. This meaning cannot be derived from Section 2.6 of the Special Provisions without warping it out of context. The pertinent paragraph of that section reads as follows:

"The right is reserved by the Department to have other work performed by other contractors and by its own forces and to permit public utility companies and others to do work during the construction of, and within the limits of or adjacent to, the Project. The Contractor shall conduct his operations and cooperate with such other parties so that interference with such other work will be reduced to a minimum. The Contractor shall agree, and hereby does agree, to make no claims against the Department for additional compensation due to delays or other conditions created by the operations of such other parties. Should a difference of opinion arise as to the rights of the Contractor and others working within the limits of or adjacent to the Project, the Engineer will decide as to the respective rights of the various parties involved in order to assure the completion of the Department's work in general harmony and in a satisfactory manner and his decision shall be final and binding upon the Contractor."

It seems clear to me that the "no claims" sentence in the foregoing paragraph refers to delays created by the active interference

of other parties working at the same time and that it does not fairly encompass delays occasioned by the mere failure of other contractors to carry out necessary preliminary work. The words, *"created* by the *operations* of such other parties" (emphasis added) connote delays caused by the *action,* but not *inaction,* of other parties.

If the foregoing analysis is correct, the result reached in this case must rest on an implication derived from Section 1.65 of the Standard Provisions, which is entitled Time of Completion and Extension of Time, pertinent portions of which read as follows:

> "The construction herein provided for is to be completed within certain times as set forth in Section 2, 'Special Provisions,' and payments provided for the job, in accordance with the prices bid therefor in the Proposal, shall be understood and agreed to cover all risks and expenses of delays except as otherwise herein provided. * * *"

But as pointed out in the majority opinion, Section 1.67 of the Standard Provisions (Suspension of Work) expressly recognizes that if the state suspends the work for a reason not involving any failure on the part of the contractor to carry out his duties he may, after 10 days, assert a claim for his resulting expenses. The state did not formally suspend the work in this case, but the trial court held that its failure to have the grade work ready was tantamount to a suspension. Moreover, equity regards that as done which should have been done. Here the state ordered the contractor to bring its forces and equipment into the field and maintain a state of readiness when it knew that in all probability the way would not be prepared in time. Should it not therefore have ordered a suspension? I agree with the trial court that it should have.

It should be borne in mind that the contractor had received its work order in November of 1954 and that its preparatory operations from that time on were closely observed and expedited by the state. The contract provided for cancellation and reletting in the event the contractor failed to commence performance as required. How, then, in the absence of an order from the state temporarily suspending its performance, was the contractor "left free to make its own decision concerning the use of its personnel and equipment which had been sent to the job-site," as suggested in the majority opinion? True, this contractor could have taken the risk, upon scouting the situation, of making its own estimate of when the job would be ready, but in the face of its contract and directions to proceed this was a risk it was not obliged to take. It was clearly up to the state to say, in the form of a temporary suspension, that the contractor was free to make some other disposition of his forces and equipment.

It was the opinion of the trial court that the contract under consideration impliedly required the state to have the grade work completed in time to enable the paving contractor to proceed on schedule, and that its failure to do so was a breach of the contract. The majority opinion finesses the point by saying that even if there was a breach, the contract provided "no-damages." Apparently this sort of terminology has been employed in other jurisdictions, but I find it unacceptable. A breach without a remedy is no breach at all. The state either has breached this contract or it has not breached it. And if the contract has been breached the contractor is entitled to his damages. My conception of the breach is this: As the contract was written there was neither an express nor an implied guaranty on the part of the state that the grade work would be done on schedule. But it is implicit in the contract that the state, in co-ordinating all of the work on the project, would not order the contractor onto the scene and keep him there (which it did by not suspending his contract and granting him an extension in due time to enable him to avoid or mitigate his damages) without reasonable assurance on its own part that the grade work would

be sufficiently advanced to permit him to commence his paving operations. This obligation was violated by the conduct of the state in the administration of the contract. In this connection, it is significant to note that the entire amount of delay for which the trial court has computed damages in this case was covered by *extensions granted by the state to the grading contractor*. Under the circumstances I can draw no fair and just conclusion except that this contractor did not receive from the state the treatment he was entitled to expect under the contract, and that he has a cause of action for his damages.

BIRD, C. J., concurs in this dissent.